IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARY A. SCHOCKLEE,  )
        Plaintiff,  )
                )
     v.  )  Civil Action No. 07-1387
                )
COMMISSIONER OF SOCIAL  )  Magistrate Judge Lisa Pupo Lenihan
SECURITY,  )
        Defendant.  )

## OPINION AND ORDER

**I.    Conclusion**

For the reasons set forth below, the Plaintiff's Motion for Summary Judgement will be denied, the Defendant's Motion for Summary Judgment granted, and the decision of the Commissioner of Social Security to deny Plaintiff's application for Supplemental Security Income ("SSI") will be affirmed.

**II.    Procedural History**

Mary A. Schocklee ("Plaintiff"), by her counsel, timely filed a Complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g), § 1383(c)(3) for review of the Commissioner's final determination disallowing her claim. The prior procedural history in this matter is as follows:

Plaintiff protectively applied for SSI on June 24, 2004, alleging disability since June 1, 2003, owing to back pain, emphysema and depression. After the state agency denied her claim in January, 2005, she requested an administrative hearing, which was held before the Administrative Law Judge (the "ALJ") on December 12, 2006. By Decision dated March 16, 2007, the ALJ denied Plaintiff's application for SSI. Specifically, the ALJ agreed that Plaintiff was not engaged in any substantial gainful activity, and had the severe impairments of degenerative disorder of the lumbar spine, chronic obstructive pulmonary disease ("COPD") and mood disorder. He further concluded, however, that (1) the arthritic changes to her lumbar spine were mild/moderate as reflected on her 2004 and 2006 x-rays; (2) her pulmonary function impairment was also "mild" by objective medical measure and opinion of her specialist; and (3) although she was prescribed psychiatric medication by her primary care physician, Dr. Pratt, she had no history of any mental health specialist treatment other than two appointments at the beginning of the contended disability period, and her mental impairments (*e.g.* concentration, persistence) were mild/moderate as assessed by the State evaluator. See Record (hereafter "R.") at 12-17. Accordingly, the ALJ determined that Plaintiff retained the ability to perform a significant number of simple, unskilled light jobs, with lifting/climbing and similar restrictions, environmental restrictions, and flexibility as to sit/stand/walk . See R. at 15-18 (noting Plaintiff's past employment as a cashier). Plaintiff appealed, and on February 14, 2005, the Appeals Council denied her request for review. This civil action was then filed.

Plaintiff asserts that the ALJ erred in (1) failing to discuss the opinion of the mental health consultative examiner, Dr. Mrus; and (2) in refusing to accept the opinions of degree of disability (*e.g.*, limitation to sedentary work/complete "disability" from employment) in the records of her treating physician, Dr. Pratt, or the physical consultative examiner, Dr. Hope. See Plaintiff's Brief in Support of Motion for Summary Judgment ("Plaintiff's Brief in Support").

III. **Factual Background**

Plaintiff, who was 52 at the time of the Decision, has an 11th Grade education, and a sporadic work history (*e.g.*, as a fast food worker and cashier) through 2000-2001, at which time she ceased employment. She alleges disability onset in June, 2003. Plaintiff is single, independent with mobility and self-care activities, drives, and provides domestic care for her two teenage sons. See, *e.g.*, R. at 113, 124.

The correspondence of Plaintiff's treating physician, Dr. Pratt, indicates that Plaintiff was a patient from 2001, although the earliest record appears to be of a physical therapy referral for back pain in November, 2003.[1] Plaintiff elected not to attended the recommended two week course of physical therapy. See R. at 102-04 (notations of unkept appointments). Plaintiff's x-ray reports of 2004 and 2006 indicate mild degenerative changes and scoliosis to her back. Compare R. at 196-98 (Plaintiff's testimony regarding constant, throbbing back pain) with id. at

---

1. Compare Plaintiff's Brief in Support at 12 (asserting that Dr. Pratt was Plaintiff's physician since 2002); R. at 67 (Plaintiff's application form, identifying Dr. Pratt as her physician since 1997).

121, 161 (x-ray reports of mild degenerative changes).[2]   Plaintiff has also related her back pain and physical disability to prior left leg injury (*e.g.*, a stab wound), but her lower leg examination/strength was unremarkable when examined and the record does not objectively document any arterial damage.  See R. at 104-109.

Dr. Pratt referred Plaintiff to a specialist, Dr. Chaundry, in July, 2004. During her treatment period, Plaintiff's emphysema/COPD was reported as "mild" and improved with medication, and a 2006 chest x-ray was unremarkable.  See R. at 105-112, 185.[3]

Dr. Pratt opined in a letter of October, 2006, that Plaintiff was restricted from work owing to chronic physical (standing, sitting, and lifting restrictions owing to severe spinal arthritis and lower leg numbness) and emotional problems (depression, anxiety and post-traumatic stress disorder from a history of domestic violence by her father and husband).  See R. at 147-48.  Dr. Pratt also prescribed several anti-anxiety/depression medications.  See Plaintiff's Brief in Support at 7-8, 12-13.  Dr. Pratt's office notations contain extensive reference to and recounting of Plaintiff's self-reporting of functional limitations.  See, *e.g.*, R. at 151.

Plaintiff was seen by the physical consultative examiner, Dr. Hope, for evaluation related to her disability benefits application, on October 8, 2004.  She related a ten-year history of lower back pain attributed to a fall at age 23, being hit by a bus in approximately 1990, and to labor/delivery.  Plaintiff also reported hypersensitivity to her left foot owing to an old stab

---

2.  Cf. R. at 155, 173-74 (Dr. Pratt's notes of Plaintiff's reporting of "excruciating" and chronic/worsening back pain being prescribed Percocet).

3.  Cf. R. at 109 (Plaintiff's indication to Dr. Chaundry that she wished to receive disability benefits because of her breathing problems and emotional state, and physician's notation that COPD was under reasonable control and Plaintiff was stressed by teenage children).

wound. See R. at 113. Dr. Hope reported that Plaintiff's efforts on motor examination were "only fair" despite encouragement and that she "moaned and grunted" on movement. Dr. Hope ultimately found Plaintiff's sensory examination to be "inconsistent", and noted that no diagnostic studies were available and that Plaintiff had been encouraged to have them but, as of the date of Dr. Hope's report, October 19, none were yet received. See R. at 114-115. Dr. Hope went on to note Plaintiff's self-reported history of beatings and stabbings, and "prominent pain behaviors". She diagnosed chronic back pain, probable injury to her left leg and sciatic nerve, hypertension and obesity. She concluded that Plaintiff could perform *sedentary* work-related activities (*i.e.*, limitation to 1-2 hours of standing/walking per work day) and was limited in her use of a left foot control. She further recommended, however, a psychological evaluation to "further delineat[e Plaintiff's] functional limitations". See R. 115-117.[4]

Plaintiff was seen on December 17, 2004 by Dr. Mrus, a State agency psychological consultant, who (unlike Dr. Hope) noted *no* overt evidence of physical impairment[5] and reported Plaintiff to have a "mild" degree of anxiety-related impact on performance and to suffer stress related to financial and family concerns. See R. at 122-27. He further reported her to conduct herself attentively, appropriately, and pleasantly. Plaintiff provided information well, neither

---

4. See also R. at 82 (report of medical consultant dated January 14, 2005, concluding that Dr. Hope's "descript[ion]" of Plaintiff's severe impairments in functional areas was not supported by the medical records).

5. See R. at 122, 124 (noting that Plaintiff ambulated, stood and sat normally during the interview and "did not appear inclined to get out of her chair in response to anxiety or physical discomfort"). Compare R. at 202-03 (Plaintiff's hearing testimony that she must switch sides while sitting every 20 minutes, and must get up and stretch every 30 minutes owing to back pain); id. at 206 (Plaintiff's testimony that she cannot lift her left foot without pulling her whole leg up and frequently trips).

showed nor described significant emotional fluctuations, showed reasonable logic and judgment and fair insight, gave no indication of language/vocabulary impairments, showed no expression of delusion, displayed no particular difficulty in dealing with abstract concepts or discerning similarities, displayed average numerical skills and intellectual ability, showed mild impairment in concentration, was well-oriented with intact memory, and displayed no impulse control deficits. Dr. Mrus' diagnosis was anxiety and depression. Plaintiff's GAF score was assessed at 55, *i.e.*, moderate symptoms/difficulties in functioning, and she was noted to be receiving no mental health therapy. Id.[6]

Plaintiff was also evaluated by a State agency psychological examiner, Dr. Dalton, on January 11, 2005. See R. at 130-40 (Mental Residual Functional Capacity Assessment). Dr. Dalton assessed "not significant" or "moderate" limitations. Cf. id. at 132 (concluding that Dr. Mrus' report contained inconsistencies and was not supported by the record as to Plaintiff's abilities to make adjustments, and overestimated the severity of her limitations); id. (noting that Dr. Mrus' report was "partially consistent" with Dr. Dalton's assessment).

---

6. Despite the findings reported in the body of his written report, as summarized above, on the column-check form attached thereto, Dr. Mrus indicated a "marked" impairment for understanding/remembering/carrying out detailed instructions, and for responding appropriately to pressures and changes in the work setting. See id. at 128. (noting that her present level of anxiety and depressive features "raise[d] questions" as to how well Plaintiff could do). See discussion, *infra*.

## IV. "Substantial Evidence" Standard of Review

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his burden of demonstrating that she was disabled within the meaning of the Social Security Act. 42 U.S.C. § 405(g).  See also, *e.g.*, Richardson v. Perales, 402 U.S. 389 (1971); Adorno v. Shalala, 40 F.3d 43 (3d Cir. 1994).

More specifically, 42 U.S.C. Section 405(g) provides:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1000) (citing Pierce v. Underwood, 487 U.S. 552, 565 (1988)); Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999).  Although there may be contradictory evidence in the record, and/or although this Court may have found otherwise, it is not cause for remand or reversal of the Commissioner's decision if substantial support exists. Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000).

## V. Disability Evaluation

The issue before the Court for immediate resolution is a determination of whether or not there is substantial evidence to support the findings of the Commissioner that Plaintiff was not disabled within the meaning of the Act.

The term "disability" is defined in 42 U.S.C. Section 423(d)(1)(A) as:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

The requirements for a disability determination are provided in 42 U.S.C. Section 423(d)(2)(A):

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence . . . 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. Section 423(d)(3).[7]

---

7. In reviewing a disability claim, the Commissioner must consider subjective symptoms as well as the medical and vocational evidence. See Green v. Schweiker, 749 F.2d 1066, 1068 (3d Cir. 1984) (explaining that "subjective complaints of pain [should] be seriously considered, even where not fully confirmed by objective medical evidence"); Bittel v. Richardson, 441 F.2d 1193, 1195 (3d Cir. 1971) ("Symptoms which are real to the claimant, although unaccompanied by objective medical data, may support a claim for disability benefits, providing, of course, the claimant satisfies the requisite burden of proof.").

In assessing a plaintiff's subjective complaints, the ALJ may properly consider them in light of the other evidence of record, including objective medical evidence, plaintiff's other testimony, and plaintiff's description of her daily activities. See Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999). And so long as a plaintiff's subjective complaints have been properly addressed, the ALJ's decisions in that regard are subject only to the substantial evidence review discussed supra. See Good v. Weinberger, 389 F. Supp. 350, 353 (W.D. Pa. 1975) (discussing Bittel and

(continued...)

Finally, the applicable regulations set forth a more explicit five-step evaluation to determine disability. The regulations, published at 20 C.F.R. §§404.1501-1529, set forth an orderly and logical sequential process for evaluating all disability claims.[8] In this sequence, the ALJ must first decide whether the plaintiff is engaging in substantial gainful activity. If not, then the severity of the plaintiff's impairment must be considered. If the impairment is severe, then it must be determined whether he meets or equals the "Listings of Impairments" in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to establish disability. If the impairment does not meet or equal the Listings, then it must be ascertained whether he can do his past relevant work. If not, then the residual functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file, to assess whether the plaintiff has the ability to perform other work existing in the national economy in light of plaintiff's age, education and past work experience.

While these statutory provisions may be regarded as harsh; nevertheless, they must be followed by the courts. NLRB v. Staiman Brothers, 466 F.2d 564 (3d Cir. 1972); Choratch v. Finch, 438 F.2d 342 (3d Cir. 1971); Woods v. Finch, 428 F.2d 469 (3d Cir. 1970).

---

7. (...continued)
concluding that where "plaintiff did not satisfy the fact finder in this regard, so long as proper criteria were used, [it] is not for us to question"); see also Kephart v. Richardson, 505 F.2d 1085, 1089 (3d Cir. 1976) (noting that credibility determinations of ALJ are entitled to deference).

8. This evaluation process has been repeatedly reiterated with approval by the United States Supreme Court. See, e.g., Barnhart v. Thomas, 124 S.Ct. 376, 379-80 (2003).

## VI. Analysis

As noted above, Plaintiff complains on appeal that the ALJ improperly (1) failed to discuss the evidence of the mental health consultant, Dr. Mrus, and (2) rejected the disability opinions of Dr. Pratt and the physical health consultant, Dr. Hope.

First, as to the State's mental health consultant, Dr. Mrus: Although the Decision does not reference Dr. Mrus, the ALJ specifically notes in reiterating his conclusions regarding Plaintiff's "mental functioning" limitations, that they "are consistent with the findings of the State Agency [mental health] examiner" (*i.e.*, Dr. Dalton). See R. at 17. In addition, the ALJ's conclusions are, as discussed above, largely consistent with Dr. Mrus' report (*i.e.*, the ALJ credited mild/moderate mental health limitations in his assessment) and expressly based on the record as a whole. See Hur v. Barnhart, 2004 WL 817359 (3d Cir. April 16, 2004) (noting that the ALJ was not expected to make reference to every piece of relevant information); Mays v. Barnhart, 2003 WL 22430186 (3d Cir. 2003) (affirming ALJ's Decision which did not explicitly discuss one consultative report but reached conclusion supported by evidence canvassed).[9]

---

9. The Court notes that the ALJ included restrictions on Plaintiff's ability to respond to workplace changes/stresses in the hypothetical presented to the vocational expert. See R. at 15; Plaintiff's Brief in Support at 9 (conceding that ALJ limited Plaintiff to "simple, routine, repetitive tasks not performed in a fast-paced production environment that only involve simple work-related decisions and in general relatively few work place changes"). It also notes that Dr. Mrus' indication of "marked" limitation in that regard was not in agreement with Dr. Dalton's assessment of moderate limitation and was reasonably determined by the ALJ to be unsupported by the record as a whole. See *supra*.

Second, to the extent Plaintiff asserts that the ALJ was required to accept Dr. Pratt's or Dr. Hope's statements of work disability/restrictions as binding for purposes of entitlement to benefits under the Act, she is in error. Although the opinion of a treating physician is entitled to increasingly enhanced weight when it is both supported by medically acceptable clinical and laboratory diagnostic techniques, and not inconsistent with the other substantial evidence of record,[10] even such opinion is not binding on the ALJ on the issues of the nature and severity of a claimant's impairment. See 20 C.F.R. § 404.1527(d)(2).

In this case, the ALJ determined that the evidence provided, including the clinical and laboratory diagnostic evidence of record, was insufficient to support the asserted functional limitations. See Petition of Sullivan, 904 F.2d 826, 845 (3d Cir. 1990) (holding that claimant must evidence his alleged functional limitations); Colavito v. Apfel, 75 F. Supp.2d 385, 400 (E.D. Pa. 1999) (holding that claimant has burden of establishing that his infirmities resulted in the alleged functional limitations on his ability to work); Roddy v. Sec. of HHS, 1990 WL 166565, *2 (N.D. Ohio July 3, 1990) (affirming decision of ALJ where nothing in treating physician's evidence " indicate[d] the existence of disabling functional limitations of the sort" the physician described in a letter asserting that [claimant] was disabled).

---

10. See 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). See also Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (holding that ALJ may afford physician's opinions more or less weight depending on the extent to which they are supported); Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) (noting that doctor's opinions unsupported by objective medical evidence is "weak evidence at best"). Cf. 20 C.F.R. § 404.1529(c)(3) (explaining that objective medical evidence is that obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of sensory deficits or motor disruption).

Indeed, as noted *supra*, a difficulty the ALJ found with Plaintiff's case was the lack of medical evidence to support either Dr. Pratt's or Dr. Hope's references to, or Plaintiff's assertions of, disabling impairments. Cf. Griggs v. Schweiker, 545 F. Supp. 475, 484 n. 2 (S.D.W. Va. 1982) (noting that "a physician's opinion must be grounded in medicine and not merely in his well-intentioned sympathy for his patient").[11] Moreover, while rejecting a conclusion of sedentary work restriction or "disability", the ALJ nonetheless accommodated significant sit/stand and left-leg use limitations in the hypotheticals presented to the vocational expert.

The record simply does not show that Plaintiff was "disabled" within the meaning of the Act as a result of her impairments (or, *e.g.*, that she was restricted to sedentary work). And the ALJ was within his discretion to so conclude. See 20 C.F.R. § 404.1512(a) (requiring claimant to "furnish medical and other evidence that [Agency] can use to reach conclusions about [claimant's] medical impairments and . . . ability to work on a sustained basis").

---

11. The courts have consistently noted that an ALJ is well within his rights to give less weight and/or deference to those of the doctor's medical opinions that are premised on self-reporting. See, *e.g.* Serrano-Diaz v Barnhart, 2004 WL 2431693, *6 (E.D. Pa. October 29, 2004) (noting that objective medical evidence is not that "prescribed based on plaintiff's subjective complaints"); Hatton v. Commissioner, 131 Fed. Appx. 877, 879 (3d Cir. 2005) (noting that a "medical source's recitation of subjective complaints is not entitled to any weight"). Indeed, to the extent that Dr. Pratt's or Dr. Hope's opinions incorporated Plaintiff's purely subjective reporting (as, *e.g.*, to back pain) and accorded full-credit to that reporting, it is important to note that credibility findings as to, and the proper weight to be accorded, a claimant's account of his/her subjective complaints and limitations are for the ALJ, although they are to be seriously considered. See Kephart v. Richardson, 505 F.2d 1085, 1089 (3d Cir. 1974); Green v. Schweiker, 749 F.2d 1066, 1068 (3d Cir. 1984). And so long as a plaintiff's subjective complaints have been properly addressed, the ALJ's decisions in that regard are subject only to the substantial evidence review discussed *supra*.

In addition, as discussed *supra*, the record supported the ALJ's legal determination that Plaintiff remained able to perform certain work. In this case, the ALJ properly looked to Plaintiff's own testimony about her activities as well as her limitations, the overall objective medical evidence of record, Plaintiff's limited treatment history, and the frequency/duration of treatment by the physicians whose evidence was being weighed.[12] This determination was for the ALJ, see C.F.R. §§ 404.1527(e), 416.927(e), and so long as he identified it as supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion", it may not be overturned. See Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1000) (citing Pierce v. Underwood, 487 U.S. 552, 565 (1988)); Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999). Nothing in the records Plaintiff brings to this Court's attention calls the ALJ's decision into question under the applicable "substantial deference" standard of review.

## VII. Order

For the reasons discussed above, it is ORDERED that Plaintiff's Motion for Summary Judgment be denied, Defendant's Motion for Summary Judgment granted, and the decision of the Commissioner affirmed.

/s/ Lisa Pupo Lenihan

LISA PUPO LENIHAN
United States Magistrate Judge

Dated: November 4, 2008

---

12. See R. at 12-19 (ALJ's Decision thoroughly reviewing evidence of record and explaining basis for holding).